NATIONAL PETROLEUM PUBLISHING CO., Appellant, v. BOWERS, Tax Commr., Appellee.

Board of Tax Appeals.

No. 26537.   Decided November 4, 1954.

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett. Russell C. Grahame, Cleveland, for appellant.

C. William O'Neill, Atty. Genl., Jack H. Bertsch, Columbus, for appellee.

## OPINION

This cause and matter came on to be considered by the Board of Tax Appeals upon a notice of appeal filed herein by the appellant under date of May 27, 1954, from a final sales tax assessment order made against it by the tax commissioner under date of April 29, 1954, for the audit period January 1, 1949 to June 30, 1949.   The order appealed from reads as follows:

"In the matter of Sales Tax Assessment, Serial No. B 4129 National Petroleum Publishing Co., 1213 W. Third St., Cleveland, Ohio; Vendor's License No. 18-28706, 18-99994.

"This matter came on to be heard and the Tax Commissioner hereby finds that:

"M. E. Newcomer, Esq., 1500 Midland Bldg., Cleveland, Ohio; Mr. F. R. Emerson, Business Manager appeared for hearing at Cleveland, Ohio on Thursday, November 5, 1953.

"The Taxpayer objected to the amount of the sales tax deficiency as determined and assessed against it and on August 19, 1953 filed a Petition for Reassessment complaining as follows:

"(1) 'Said assessment is erroneous, unreasonable, unlawful and discriminatory.'

"(2) 'The Petitioner purchased the above mentioned zinc engravings and mats from N. E. A. Service, Inc., for use primarily and directly in the production of tangible personal property for sale by manufacturing, and therefore said purchases are not taxable under the Sales and Use Tax Act as "Retail Sales." The Petitioner, The National Petroleum Publishing Company, as its name implies, is engaged in the business of manufacturing, publishing and distributing magazines for the petroleum industry. These magazines are manufactured and distributed by the Petitioner throughout the United States. The above mentioned zinc engravings and mats are used by Petitioner in the preparation of its editorial copy for publication purposes. An appropriate exemption certificate was furnished by Petitioner to N. E. A. Service Inc.'

"The assessee edits and publishes a Trade Journal, 'National Petroleum News'; the assessee in connection with editing and publishing said issue, purchased engravings from N. E. A. Service, Inc., which it delivers to its printer (The Penton Printing Co.,) to be used by the latter in the printing of the journal. The sales were effected by N. E. A. Service, Inc., to assessee, sales tax exempt by reason of an exemption certificate furnished to the seller by the Assessee designating that the tangible personal property involved was to be used directly in manufacturing for sale.

"We are not in accord with the Assessee's position as to the claimed exempt status of said purchases for the reason that assessee does not print said journal and therefore is not engaged in manufacturing for sale as defined in §5739.01 R. C.

"The sales tax as now imposed against the several transactions is properly issued and the assessment is held to stand in the amount of the sales tax deficiency as herein determined.

"The penalty is conditionally remitted in part.

"Therefore, it is the order of the Tax Commissioner that if payment of

|  | Assessment | Penalty | Total |
|---|---|---|---|
| (Sales) | $168.33 | $8.42 | 176.75 |

is made within thirty (30) days from date of receipt by the taxpayer of the journal entry showing final determination, the assessment shall stand as adjusted in the above amount. In the event this matter is appealed to the Board of Tax Appeals or the Supreme Court, said thirty (30) day period shall begin to run from the date the entry of the Board of Tax Appeals is filed or the decision of the Supreme Court is rendered.

"If the total amount is not paid as above provided, the assessment shall stand as issued in the following amount:

254

| | Assessment | Penalty | Total |
|---|---|---|---|
| (Sales) | $168.33 | $25.25 | $193.58" |

The errors complained of by appellant, with respect to said final order, are as follows:

"1. That the Tax Commissioner erred in finding that the purchase by the Taxpayer of zinc engravings and mats from N. E. A. Service, Inc., for use in the business of manufacturing, publishing and distributing its trade journal 'The National Petroleum News,' does not have exempt status for the reason set forth in said findings that the Taxpayer does not print said Journal and therefore is not engaged in manufacturing for sale as defined in §5739.01 R. C.

"2. That the Tax Commissioner erred in finding that the sales tax imposed by reason of the above-mentioned purchases was properly issued in the amount set forth in said findings.

"3. That the Tax Commissioner erred in not finding that the Taxpayer is the publisher of said magazine and hence the manufacturer thereof for purposes of sale, within the meaning of said §5739.01 R. C., and in not finding that the above mentioned purchases have exempt status under the provisions of said Section.

"4. That said Tax Commissioner erred in not finding that said Sales Tax Assessment is erroneous, unreasonable, unlawful and discriminatory, and therefore was improperly issued."

The cause was submitted to the Board of Tax Appeals upon the notice of appeal, the transcript of proceedings before the tax commissioner, the evidence presented at a hearing before this board, and briefs of counsel.

The facts are not in dispute. During the period of the audit, National Petroleum, Publishing Company, an Ohio corporation with its office in Cleveland, Ohio, was engaged in collating and assembling news of the Petroleum industry into two periodicals, one of which, the National Petroleum News, is of concern here. In essential part, National Petroleum Publishing Company's business consists of making a master layout of each issue of the National Petroleum News and forwarding it, along with certain plates, mats and printing instructions, to the Penton Press in Cleveland, Ohio, which is the subsidiary of Penton Publishing Company and prints for magazine publishing houses regularly. Upon receipt of the printing instructions the Penton Press, with its own employees and own machinery and technical skill, prints the National Petroleum News in its marketable form. The printing is by contract with Penton Press and appellant has no control whatsoever over Penton's employees or the printing of the magazine, except however, that checks can be made by appellant to determine that the printing meets its quality and form specifications. Finished copies of the magazine were mailed to appellant's subscribers by an agent of appellant, and any remaining copies were returned to National Petroleum Publishing Company for reserve. Monthly invoices submitted to appellant by Penton Press were broken down according to the various types of work done, but were paid in a lump sum.

Among the various materials supplied by appellant to Penton Press for the printing of the magazine, such as paper, envelopes, and mailing

labels, were zinc engravings of news pictures to be printed in the magazine, and it is these zinc engravings which are the subject matter of the sales tax assessment here under consideration. The engravings were purchased by appellant from N. E. A. Service, Inc., and title to them remained at all times with appellant. In making an audit of appellant's books, the sales tax examiner refused to grant National Petroleum Publishing Company an exemption for its purchases of zinc engravings on the ground that they were not directly used by appellant in manufacturing or processing.

The issue in this case may be stated as follows:

When zinc engravings are purchased by a publisher and supplied by the publisher to a printer for use by the printer in printing a magazine periodical for the publisher, are said zinc engravings used directly by the publisher in manufacturing or production of items of tangible personal property for retail sale so as to except said zinc engravings from the definition of "retail sale" as the same is found in §5739.01 R. C.?

Sec. 5546-1 GC (§5739.01 R. C.), reads in part as follows:

"As used in §§5739.01 to 5739.31, inclusive, R. C.:

"(A) * * *

"(B) 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is granted, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever; and include the production or fabrication of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the production or fabrication work; * * *

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) * * *

"(2) * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, etc. * * *."

From the evidence it seems clear to us that appellant publisher is a vendor making retail sales of items of tangible personal property (issues of National Petroleum News). It also seems clear to us that any items that appellant purchases to use directly in manufacturing, processing and printing its magazine are entitled to be purchased by appellant without the payment of sales tax upon presentation of the proper exemption certificate to its vendor. Apparently the tax commissioner does not disagree with this contention, and he says, in effect, that if the appellant had itself used and consumed the items in dispute in printing its magazine the tax would not apply but that since appellant hired someone else (Penton Press) to do its printing for it, it became liable for the tax when it turned possession of the zinc plates over to the printer.

In our opinion the tax commissioner's interpretation of the statute in this case produces an unreasonable and illogical result.

From a reading of the entire statute relative to "retail sales" and

"sales at retail" we conclude that there is no requirement that items of tangible personal property be actually physically used by the purchaser to bring the item involved within the exception noted in the statute, if, in fact, the item itself is actually used in manufacturing or processing some item of tangible personal property for sale.

In the brief filed on behalf of the tax commissioner it is stated:

"It is appellee's position therefore that Penton Press was manufacturing or processing printed magazines for sale to National Petroleum and that National Petroleum was not using the engravings directly in any manufacturing or processing operation."

As to this, we are of the opinion that Penton Press, in and by its transactions, does not sell magazines to National Petroleum Publishing Company. We are of the opinion that Penton Press merely furnishes a contract printing service to appellant for a lump sum consideration.

In the absence of evidence to the contrary we must assume that the tax commissioner has followed, until the assessment was made in the instant case, the advice given to him by the attorney general of Ohio in Opinion No. 4549 for the year 1935. The pertinent paragraph of this opinion reads as follows:

"The first question presented in your communication is with respect to the sale of an electrotype to a buyer for use by a printer or publisher in manufacturing or processing some article such as a catalogue, book or calendar for such buyer. Applying the principles of the statutory provisions here in question according to their manifest intent, and keeping in mind the principle or rule that what one does through another he does for himself, it appears that in the transaction first noted in your communication the electrotype was purchased with the intent and purpose on the part of the buyer to use or consume such property in manufacturing or processing and that the sale of the electrotype in this case is not subject to the tax provided for by this act."

In this connection it is likewise noted that the provisions of §5623 GC (§5715.28 R. C.), read as follows:

"The department of taxation shall decide all questions that arise as to the construction of any statute affecting the assessment, levy, or collection of taxes, in accordance with the advice and opinion of the attorney general. Such opinion and the rules, regulations, orders, and instructions of the department prescribed and issued in conformity therewith shall be binding upon all officers, who shall observe such rules and regulations and obey such orders and instructions, unless the same are reversed, annulled, or modified by a court of competent jurisdiction."

We must also note that an administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative to do so. See State, ex rel. Automobile Machine Company v. Brown, 121 Oh St 73.

For the foregoing reasons we find for the taxpayer and it is considered and ordered that the final order of the tax commissioner herein complained of be, and the same hereby is, reversed.